## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

---

YVETTE LOPEZ,

    Plaintiff,

v.

WENDY'S INTERNATIONAL, LLC d/b/a Wendy's,

    Defendant.

---

## COMPLAINT

---

Comes now the plaintiff, Yvette Lopez, by and through her counsel, McNamara & Shechter LLP, and for her Complaint against the above-named Defendant, alleges as follows:

### JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332. Complete diversity of jurisdiction exists between the parties and the amount in controversy exceeds seventy-five thousand ($75,000.00) dollars[1].

2. The acts complained of herein were committed, or had their principal effect, within the District of Colorado, and therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391.

### PARTIES

---

[1] As noted below, Plaintiff intends to amend her Complaint to add Federal law discrimination claims upon receipt of an appropriate notice from the EEOC. At such time, jurisdiction will also be found pursuant to 28 U.S.C. §1331.

1

1. Plaintiff Yvette Lopez ("Lopez") is a citizen of the United States, and a resident of and domiciled in the State of Colorado.

2. Defendant Wendy's International, LLC d/b/a Wendy's (hereinafter "Wendy's") is an Ohio Limited Liability Company with its principal place of business at Dublin, Ohio.

## ADMINISTRATIVE PREREQUISITES

3. Plaintiff timely filed a charge of discrimination based on disability, age, and retaliation; Charge No. E2100010826 (the "Charge"), with the Colorado Civil Rights Division ("CCRD") following her discharge from Wendy's. On November 23, 2021, the CCRD issued a Determination that there was probable cause to believe that Wendy's had violated the Colorado Anti-Discrimination Act, C.R.S. 23-34-402 *et seq* ("CADA") by failing to accommodate Plaintiff's disability, discriminating against her by discharging her based upon her disability, and retaliating against her for engaging in activity protected by CADA. After an unsuccessful conciliation, the CCRD issued a Notice of Right to Sue on February 28, 2022.

4. Pursuant to a work-sharing agreement between the CCRD and the United States Equal Employment Opportunity Commission ("EEOC"), timely filing of a Charge of Discrimination with the CCRD constitutes timely filing of a Charge of Discrimination with the EEOC. Ms. Lopez is presently awaiting the issuance of a Notice of Right to Sue from the EEOC, and thus will seek to amend her Complaint to assert such claims upon the receipt of such notice. *See Rodriguez v. Wet Ink, LLC*, 603 F.3d 810 (10th Cir. 2010) (issuance of Notice of Right to Sue by CCRD does not trigger 90 day filing period for Federal Claims).

## FACTUAL ALLEGATIONS

5. Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully incorporated herein.

6. Wendy's operates a chain of fast-food restaurants nationwide, including numerous Company-owned stores within the State of Colorado. Around the time of the filing of the Charge, Wendy's employed approximately 3,400 employees within the State of Colorado.

7. Lopez worked for Wendy's for nearly 40 years. An excellent career employee, Lopez rose from working within the stores as a front-line employee and ultimately was employed by Wendy's as a District Manager until the company terminated her employment on June 25, 2020, because she was disabled.

8. As District Manager, Lopez was responsible for overseeing the operation of a number of restaurants operated by Wendy's within the Denver metropolitan area. Among numerous other tasks, Lopez was responsible for visiting stores and supervising their operation. However, the majority of Lopez's job was performed behind and seated at her desk or while working on a laptop at a table at one of the Company's restaurants.

9. In May of 2018, while travelling between Wendy's locations and while on the clock, Lopez was involved in a motor vehicle accident. Although Lopez was not at fault for the accident, she nonetheless suffered numerous significant injuries to her neck, back, shoulder, and right knee. Despite these injuries, Lopez returned to work quickly and resumed her job at full duty.

10. For approximately *one and a half years*, Lopez continued to perform her duties on a full-time basis and without restriction. She did so despite the fact that she was in often extreme discomfort and pain and was severely limited in her performance of major life activities such as walking and standing. During this time period, Lopez was not driving a company vehicle as her injury prevented her from doing so.

11. In August of 2019, Lopez, in consultation with her workers compensation physician, determined that knee surgery was necessary to reduce Lopez's pain level in her right knee. In November of 2019, Lopez underwent surgery and thereafter took FMLA leave from Wendy's.

12. Lopez provided regular updates to Wendy's about her recovery from knee surgery. On May 4, 2020, Wendy's HR Business Partner Gloria Devine ("Devine") mailed Lopez a standard form inquiring about Lopez's ability to return to work. Lopez indicated she was not able to return at the time but had a follow-up appointment on May 13.

13. On April 8, 2020, Lopez provided Wendy's with a Work Activity Status Report. The Report listed a number of temporary restrictions on Lopez's ability to work as of April 8, including:

- No squatting or kneeling
- No lifting or carrying more than ten pounds while on her feet
- No standing more than ten minutes at a time
- No walking on uneven terrain
- No climbing ladders
- Ground level work only
- No driving
- Use of cane or crutches as needed

Of these restrictions, only the inability to drive imposed any serious impediment to Lopez being able to perform the essential functions of her job.

14. The Work Activity Status Report of May 13, 2020, showed vast improvement – an 80% sitting requirement had been reduced to 66% and lifting and carrying was increased to 15

pounds. Finally, the driving restriction was also lifted. By May, Lopez was rarely using a cane and not using crutches at all. However, Wendy's made no effort to determine whether or not Lopez was actually using walking assistance devices prior to her discharge.

15. Lopez's leave was extended – and she was asked to report back following her next check-up on June 10, 2020.

16. On June 10, Lopez's doctor lifted yet more restrictions, this time increasing her standing from 10 minutes at a time to 30 minutes at a time, sitting was reduced again to 33% of the time, and lifting was increased to 25 pounds. The physician indicated that Lopez was fully able to return to work.

17. Following any of these reports, Wendy's conducted no investigation or ever interviewed Lopez or anyone else to determine whether Lopez's restrictions could be accommodated. Although Devine spoke with Lopez on June 10, Lopez indicated she was ready to go back to work, rather, Wendy's based its termination decision entirely on the doctor's notes. Devine did not even consult with Lopez's manager in making the termination decision.

18. The District Manager job description makes no mention of lifting at all, nor does it require the ability to walk on uneven surfaces, climb ladders, stand for extended periods or otherwise work above ground level.

19. Nonetheless, on June 25, 2020, Wendy's terminated Lopez because Devine determined that Lopez was medically unable to perform the essential functions of her position.

20. As a district manager, Lopez was responsible for observing and evaluating others. Approximately half of her time was spent at the stores (or travelling to them), and approximately half back at her office. Although this did involve walking around the stores and standing to

observe other employees and equipment, Lopez's work even before the accident did not require her to be on her feet for long periods.

21. Moreover, Lopez's restriction was not that she had to stop working after 30 minutes of standing – just that she then had to be working seated for a few minutes to recover before being able to work standing again.

22. Lopez – who knew the District Manager job intimately and was confident she could perform the job based on her years of experience doing so – even for a year and a half with pain prior to the surgery told Devine on June 11 that she knew she could do the job and was ready to get back to work.

23. Wendy's previously accommodated other employees with workplace injuries, including a Store Manager who was required to be seated 75% of the time.

24. Wendy's had a transitional duty program where it provided for transitioning injured employees back into the workplace in other positions. Counsel for Wendy's told the CCRD that Lopez was not referred to the transitional duty program because she had a driving restriction. However, by June 10, 2020, Lopez's driving restriction had been lifted. Wendy's failed to accommodate Lopez by placing her in the transitional duty program.

25. At no time between June 11 and June 25 did Wendy's ever attempt to reach out to Lopez and determine what reasonable accommodations she needed to perform her job – rather Devine made assumptions without evidence. This failure by Devine constitutes a gross failure by Wendy's to engage in the interactive process required by CADA and the Americans with Disabilities Act.

26. Moreover, Wendy's never replaced Lopez while she was on leave. Rather, other District Managers covered her stores and assumed Lopez's workload – including significant

paperwork responsibilities. Wendy's never discussed or evaluated whether these paperwork duties which normally belonged to Lopez and other District Managers could be given to Lopez while she continued to recover. This was precisely the sort of accommodation Wendy's had provided to similarly situated employees in the past.

27. The basis for Lopez's discharge was merely a pretext to cover for unlawful discrimination or retaliation.

28. Defendant failed to engage in the interactive process following Plaintiff's requests for a reasonable accommodation as required by 29 CFR§ 1630.2 *et seq*.

29. As a result of the Wendy's actions, Lopez has suffered economic losses, including but not limited to, lost wages, 401k withdrawal penalties, loss of her home, and emotional distress. Plaintiff's damages exceed $75,000.00.

## STATEMENT OF CLAIMS

### First Claim for Relief
**(Disability Discrimination in Violation of the Colorado Anti-Discrimination Act, C.R.S. §§ 24-34-301, *et. seq.*)**

30. Plaintiff reincorporates and realleges all previous paragraphs of her Complaint as if fully incorporated herein.

31. Plaintiff was a qualified individual with a disability, within the meaning of that phrase under CADA. Plaintiff is further entitled to reasonable accommodations related to her disabilities as set forth in C.R.S. §24-34-402.3.

32. Plaintiff was denied reasonable accommodations, including, but not limited to, modified duties while recovering from her surgery.

33. Plaintiff was discharged on the basis of her disability in violation of CADA.

7

34. At the time of her discharge, Plaintiff was disabled within the meaning of that term under CADA, or was regarded as disabled, and was qualified to perform the essential functions of her position, with or without reasonable accommodation.

35. Defendant's purported basis for Plaintiff's discharge was merely a pretext to cover for unlawful discrimination.

36. As a result of Defendant's actions, Plaintiff has suffered economic losses and emotional distress.

37. Defendant's conduct was willful and/or made with reckless disregard for Plaintiff's civil rights, entitling Plaintiff to an award of punitive and/or liquidated damages as may be recoverable at law.

**Second Claim for Relief**
**(Retaliation in Violation of the Colorado Anti-Discrimination Act, C.R.S. §§ 24-34-301, *et. seq.*)**

38. Plaintiff reincorporates and realleges all previous paragraphs of her Complaint as if fully incorporated herein.

39. Plaintiff engaged in protected activity by making good faith reports of discrimination prohibited by the Colorado Anti-Discrimination Act.

40. Plaintiff engaged in protected activity by requesting reasonable accommodations afforded by the Colorado Anti-Discrimination Act.

41. Defendant engaged in an adverse employment actions, including, but not limited to, by terminating Plaintiff's employment on June 25, 2020.

42. There was a causal connection between Plaintiff's protected activity and the adverse employment action.

43. Defendant's basis for the purported discharge was merely a pretext to cover for unlawful retaliation.

44. As a result of Defendant's actions, Plaintiff has suffered economic losses and emotional distress.

45. Defendant's conduct was willful and/or made with reckless disregard for Plaintiff's civil rights, entitling Plaintiff to an award of punitive and/or liquidated damages as may be recoverable at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Yvette Lopez respectfully prays for an order of this honorable Court entering judgment in her favor and against Defendant, and that the Court order the following relief:

A. Declare that the acts and practices complained of herein were in violation of federal and state laws, and constituted intentional and/or willful conduct by Defendant;

B. Enjoin and permanently restrain these violations;

C. Direct Defendant to take affirmative steps as are necessary to ensure that the effects of these unlawful employment practice are eliminated and do not continue to affect Plaintiff's employment opportunities;

D. Award Plaintiff actual economic damages in an amount to be determined at trial to compensate her for any lost wages, benefits, lost employment opportunities, and other consequential damages;

E. Award Plaintiff compensatory damages including, but not limited to, those for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

  F. Award Plaintiff punitive and/or liquidated damages, as may be allowed by law, and to be determined at trial;

  G. Retain jurisdiction of this matter to ensure full compliance with the orders of this Court;

  H. Award Plaintiff reasonable attorneys' fees and costs of this litigation;

  I. Award Plaintiff pre-judgment and post-judgment interest at the highest lawful rate;

  J. Award Plaintiff the costs of this action, together with reasonable expert witness fees, as provided by law; and

  K. Grant such other and further relief as this Court deems necessary, proper, and just.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 31st day of May, 2022.

                /s/ Mathew S. Shechter
                Mathew S. Shechter, Esq.
                McNamara & Shechter LLP
                1888 Sherman Street
                Suite 403
                Denver, CO 80203
                (303) 333-8700
                mss@18thavelaw.com